STATE OF MAINE *versus* WILLIAM H. KALER.

The substantive offence described in the Public Laws of 1858, c. 33, § 12, is complete whenever there is a keeping of intoxicating liquors with intent that an unlawful sale thereof shall be made in this State by any person.

Section 14 does not require that the complaint shall allege by whom the intended sale is to be made.

If a complaint does contain such an allegation and there be a variance between the allegation and the proof of the particular person by whom the defendant intended the sale to be made, it will be an immaterial one.

Section 14 of c. 33 of Public Laws of 1858, as amended by the last clause of § 1 of c. 131 of the Public Laws of 1867, added nothing to the offence described in § 12.

State *v.* Kaler.

ON EXCEPTIONS.

COMPLAINT for search and seizure, under c. 33 of the Public Laws of 1858, which came to this Court by appeal from the municipal court of the city of Portland.

So much of the complaint as is essential, was as follows: That, on the eighth day of August, in said year, at said Portland, intoxicating liquors were, and still are kept and deposited by Daniel A. Meehan and William H. Kaler, of Portland, in said county, in the store occupied by them on northerly side of Fore street, and is the second store easterly from Cross street, said Meehan and Kaler not being then and there authorized by law to sell said liquors within said Portland, and that said liquors then and there were, and now are intended for sale in this State, by said Meehan and Kaler, in violation of law, against the peace of the State, and contrary to the form of the statute in such case made and provided.

In behalf of the defendant it appeared, and it was not disputed by the State, that the liquors were placed by Meehan in the rear of Kaler's shop, where they were found, with Kaler's consent; that Meehan was the owner of the liquors, and that Kaler had no interest in them nor in the sale of them, nor were any of them sold on Kaler's premises. Kaler was in the crockery and old furniture business; and there was evidence that Kaler knew that Meehan intended the liquors for unlawful sale. The defendant testified that Meehan was in the business of selling, and that he used to come there occasionally and fill kegs, jugs and demijohns.

Thereupon, the presiding Judge instructed the jury, among other things, — that if defendant Kaler kept the liquors in his store, knowing that Meehan was making unlawful sale of them, and intending to facilitate such unlawful sale by Meehan, or to enable Meehan to conduct the business with greater security, he would be liable under this complaint, though he had no interest in the liquors and no intention of selling them himself.

State *v.* Kaler.

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*W. L. Putnam*, for the defendant.

This case depends on statute 1858, c. 33, § 12, and § 14, clauses 1 and 3, and on statute 1867, c. 131, § 1.

Section 12 of the first statute prohibits keeping with the intent that the same shall be sold by any person; but that provision seems to have exhausted itself in the next section, where it is provided that liquors kept as in the 12th section shall be forfeited. Section 14 does not contain apt words to punish any person but the seller himself, or the expected seller; and so the Legislature considered when it passed the above statute of 1867.

But under the Law as amended in 1867, clearly, a person keeping liquors with the intent that they shall be sold by some other person or to facilitate such other person in the sale, is liable to punishment.

The only question is whether apt words have been used in the complaint to hold defendant, it appearing that he had no intention of selling himself.

In the clause of the complaint, "intended for sale by Meehan and Kaler," is the preposition "by" governed by the word "intended" purely and simply, or does the clause mean that Kaler and Meehan were the expected sellers of the liquors?

Sandwiching in the names of Meehan and Kaler between the word "sale" and the words "violation of the law," makes it evident that the sale was to be by them; otherwise their names would not have thus interposed between the word "sale" and those other words which were necessary to describe its unlawful character; and the expression would have been, "intended by said Meehan and Kaler for unlawful sale by some other person," &c., or "with the intent that they should be sold unlawfully by some other person," &c.

Keeping liquors with intent to sell one's self, and keeping

liquors with the intent that they shall be sold by some other person, may be *equivalent* offences and liable to the same punishment; but they are not the *same* offences, any more than principals and accessaries in murder are the same offenders. In either case appropriate language is requisite to express the different circumstances of the offences. The words used in this complaint are those usual and apt to express that the person complained against is the intended seller; and therefore can hardly be apt words to cover offences under the other branch of the statute.

The words used are nearly in the same order as those used in § 14, clause 3; to which the Legislature in 1867, before this complaint was made, deemed it necessary to supply other alternative words to express the offence proved here.

It is plain, then, that the words "by said Meehan and Kaler" cannot be referred to the word "intended" alone, but limit the word "sale." Possibly it is not necessary to allege in the complaint the name of the person by whom the liquors are to be sold; but it does not therefore follow that Meehan's and Kaler's names can be dropped from this allegation of the complaint, because dropping their names from this allegation would leave this complaint in the condition of that in *State* v. *Leonard*, 47 Maine, 462. Perhaps, too, this complaint would have been sufficient if the words had simply been transposed, so as to read "intended by said Meehan and Kaler for sale in this State in violation of law;" but I have shown that that is not the meaning of what is alleged.

By its proper and natural construction, the complaint charges Kaler as being the intended seller of the liquors seized; and this not being proved, the complaint falls.

*Frye, Attorney Gen'l, contra.*

BARROWS, J. — In § 12, c. 33, Laws of 1858, the offence prohibited is the depositing or having in one's possession intoxicating liquors with the intent to sell them in this State

in violation of law, or with intent that the same shall be so sold by any person, or to aid or assist any person in such sale thereof. It is not necessary that the keeper shall intend to make the unlawful sale himself. The offence is complete where there is a keeping with the intent that an unlawful sale shall be made in this State by any person, or with the intent to aid or assist in such unlawful sale. And this keeping is a substantive offence; not (as the ingenious counsel for defendant would have it,) a matter of principal and accessary depending upon the question whether there is a personal intention to sell or only a design to aid some one else in the unlawful sale. The keeper is a principal offender; and the offence of keeping with such intent is the same, whether the sale is to be made by the keeper or some one else. Accordingly, in § 14, which prescribes the course of proceeding and the essentials of the complaint, it is not required that the complaint shall state by whom the intended sale is to be made, — but only that they are kept and deposited in some place in this State by some person or persons "and that said liquors are intended for sale within the State in violation of law." The name of the person so keeping the liquors shall be stated in the complaint, and the officer serving the search warrant, if he find such liquors, shall arrest him and bring him before the magistrate for trial. The original section then proceeded as follows : — " if, upon trial, the Court, upon the evidence adduced, shall be of opinion that the liquors were so, as aforesaid, kept, deposited and intended for unlawful sale by the person or persons named in said complaint, he or they shall be found guilty thereof," &c.

It might be argued that this clause, on account of the collocation of the words, should be so construed as to authorize a conviction only when it appeared that the intended sale was to be made by the person or persons named in the complaint. Such a construction, however, would not fulfil the design of the statute, and out of abundant, and as it would seem needless precaution, it was therefore amended

in 1867, by inserting after the word "complaint," in the clause last quoted, the words "or by any other person or persons with his or their knowledge or consent." But this adds nothing to the definition of the offence as contained in § 12. It was complete without this. Now, in the case at bar, it did appear upon the trial, and the jury were required by the instructions to find, "upon the evidence adduced," that the respondent Kaler kept the liquors in his store, knowing that Meehan was making unlawful sale of them and intending to facilitate such unlawful sale by Meehan. This includes all the elements of the offence as described, not only in § 12, but in that clause of § 14, as amended in 1867, where the penalty is imposed.

But it is argued from the order in which the words stand, that the allegation "that said liquors then and there were, and now are intended for sale in this State by said Meehan and Kaler, in violation of law;" conveys a charge that Meehan and Kaler were the expected sellers of the liquors. What if that idea is included? And what if, as to Kaler, the evidence does not sustain it? There is a direct and plain charge against Kaler as well as against the other defendant, of a keeping of intoxicating liquors and an intention that the same shall be unlawfully sold in this State by somebody, — (Meehan and Kaler, to wit,) — but by whom sale was to be made it was unnecessary to allege, nor if alleged, to prove as alleged; for that portion of the allegation is neither essential to nor descriptive of the offence. Kaler committed the offence if he had the liquors in his keeping, intending that the same should be sold within the State, in violation of law by anybody, — himself or another, — it mattered not which, — so that a variance in that respect between the allegation and the proof vitiates nothing. All the necessities of legal identity between the charge and the proof are fulfilled when the essential allegations are proved as laid. Thus, where an indictment alleged the commission of a robbery in a dwellinghouse of a person named, a variance as to the owner's name was held immaterial, be-

cause it was not essential to the crime of robbery that it should have been committed in a dwellinghouse. *Pye's case*, East's Pleas of the Crown, 785. See also *U. S.* v. *Howard*, 3 Sumner, 12.

It is sufficient, in cases of this sort, if there be allegation and proof against the defendant of a keeping of intoxicating liquors, with an intention that the same shall be sold within this State in violation of law; and a variance between the allegation and the proof, as to the particular person by whom the defendant intends the sale shall be made, is an immaterial variance.        *Exceptions overruled.*

APPLETON, C. J., CUTTING, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.